UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Dennis A. Folkerts and<br>Janet L. Folkerts<br>　　　　Plaintiffs,<br><br>vs.<br><br>Seterus, Inc.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.　　17-cv-4171 |

### Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment

Plaintiffs, DENNIS A. FOLKERTS and JANET L. FOLKERTS ("Folkerts"), by their undersigned counsel, hereby submit this Memorandum in Support of their Motion for Summary Judgment, as follows:

### I.　Introduction

Plaintiffs Dennis A. Folkerts and Janet L. Folkerts submit this memorandum of law in support of their motion for summary judgment in their favor on all their claims under the Telephone Consumer Protection Act (hereinafter "TCPA"), the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), and the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. (hereinafter "FCRA"). For the reasons set forth in this memorandum, Plaintiffs' motion, and Plaintiffs' Local Rule 56.1(a)(3) Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Statement of Facts" or "SOF"), Plaintiffs respectfully request that this Court grant summary judgment to Plaintiffs and against Defendant, Seterus, Inc. (hereinafter "Seterus").

### II.　Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion… The nonmovant will successfully oppose summary judgment only when it presents 'definite,

1

competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). "In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus, Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)); see also *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument.")

### III. THE TELEPHONE CONSUMER PROTECTION ACT

For the Folkerts to prevail on their TCPA claim, they must prove that: (1) a call was made; (2) the caller used an automatic telephone dialing system (hereinafter "ATDS") or artificial or prerecorded voice; and (3) the telephone number called was assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added); 47 C.F.R. § 64.1200(a)(1); *Thrasher-Lyon v. Ill Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) (citing *Pimental v. Google Inc.*, No. 11-2585, 2012 U.S. Dist. LEXIS 28124, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012)).

#### A. SETERUS CONTACTED PLAINTIFFS' ON THEIR CELLULAR PHONES USING AN AUTOMATED TELEPHONE DIALING SYSTEM IN VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

Defendant violated the TCPA by contacting Plaintiffs' on their cellular phones using an automatic telephone dialing system. The TCPA defines an ATDS as equipment *which has the capacity* (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers. 47 U.S.C. § 227(a)(1) (emphasis added); see also 47 C.F.R. § 64.1200(f)(2) (FCC adopting the TCPA's ATDS definition).

As technology and telemarketing methods have evolved and expanded, so has the FCC's definition of an ATDS. The Federal Communications Commission ("FCC") has now long recognized that "predictive dialers," which have "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," are ATDS under the TCPA. *2003 FCC Order at 14091.*

Predictive dialing is a technique used to call many customers within a short period of time in the most efficient manner to optimize the utilization of customer service agents.

The FCC noted that "the principal feature of predictive dialing software is a timing function, not number storage or generation." *Id.* Thus, the basic function of such dialing equipment…[is] the capacity to dial numbers without human intervention." *In Re Rules & Regs Implementing the TCPA 23 FCC Rcd. 559, 566 (2008)*. The FCC further broadened the definition of an ATDS under the TCPA by concluding that equipment's "capacity" to dial random or sequential numbers is not limited to its present ability." *In re Rules & Regs Implementing the TCPA, 30 FCC Rcd. 7961, 7972 (2015)* ("2015 FCC Order").

Defendant admits that it uses the Proactive Contact System by Avaya and that this system is considered an ATDS. SOF ¶¶ 12. However, Defendant argues that it has not violated the TCPA because it has created a process to manually dial borrowers' cell phone numbers. *See* Exhibit 16, p. 46-48. Defendant completes its manual dial using Syntelate, which is described in its Policy and Procedures manual as a "predictive dialer system." SOF ¶¶ 14. Furthermore, Plaintiffs' expert, Bradley Walton, opined that the systems utilized by Defendant meet the definition of an ATDS. SOF ¶¶ 15. Defendant essentially argues that despite the fact it called Plaintiffs using an ATDS, it is not liable under the TCPA because Defendant's employees manually dialed Plaintiffs' cell phone numbers. Thus, the calls did not function entirely without human intervention. However, Defendant's argument is inapposite to Seventh Circuit case law.

The Seventh Circuit's decision in *Blow v. Bijora, Inc.*, 855 F.3d 797 (7th Cir. 2017) is binding precedent which addresses the definition of ATDS. The court relies on the FCC's 2015 order to hold that the term "capacity" in the ATDS definition is not limited to "present ability." Though *ACA International v. FCC*, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) has set aside portions of the 2015 FCC Order regarding the definition of ATDS, the 2003 FCC Order and the 2008 FCC Order are still in effect. Indeed, the *ACA International* court recognized that any definition of capacity has to take future functioning abilities into account:

> After all, even under the ostensibly narrower, 'present ability' interpretation advanced by petitioners, a device that 'presently' (and generally) operates as a traditional telephone would still be considered have the "capacity" to function as an ATDS if it could assume the requisite features merely upon touching a button on the equipment to switch it into autodialer mode. Virtually any understanding of "capacity" thus contemplates some future functioning state, along with some modifying act to bring that state about. *ACA International v. FCC*, 2018 U.S. App. LEXIS 6535 *16 (D.C. Cir. Mar. 16, 2018)

The Court in *ACA International* reasoned that "the question whether equipment has the 'capacity' to perform the functions of an ATDS ultimately turns less on labels such as 'present' and 'potential' and more on considerations such as how much is required to enable the device to function as an ATDS: does it require the simple flipping of a switch, or does it require essentially a top-to-bottom reconstruction of the equipment?" *Id.* at 16-17.

The *Blow* court adopted the view expressed in earlier FCC orders that "predictive dialers, which have the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," meet the ATDS definition. *Id.* at 802 (citing FCC's 2003 order). The *Blow* decision is additional precedent, unaffected by *ACA International*, that a predictive dialer is an ATDS in the Seventh Circuit. As such, the fact that Defendant used an ATDS to dial phone calls manually is proof positive that Defendant violated the TCPA.

### B. SETERUS CONTACTED PLAINTIFF DENNIS FOLKERTS ON HIS CELLULAR PHONE USING AN AUTOMATED TELEPHONE DIALING SYSTEM WITHOUT HIS CONSENT

Defendant violated the TCPA because it did not have the express consent of Dennis Folkert to contact him on his cell phone. The TCPA's prohibition on using an autodialer applies only "absent the express consent" of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); see also *In re Rules & Regs Implementing the TCPA*, 7 FCC Rcd 8752, 8769 ¶ 29 (Oct. 16, 1992) ("1992 Order")("The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use."). Defendant never received consent from Dennis Folkerts to contact him on his cell phone as evidenced from the fact that they did not have access to his phone number. Defendant was only able to obtain Dennis Folkert's phone number

4

through a skip trace. SOF ¶¶ 22. Thus, Defendant never had the express consent of Dennis Folkerts to contact him on his cell phone.

### C. PLAINTIFF JANET FOLKERTS REVOKED HER CONSENT FOR SETERUS TO CONTACT HER CELLULAR PHONE USING AN AUTOMATED TELEPHONE DIALING SYSTEM

Defendant violated the TCPA by calling Plaintiff Janet Folkerts cell phone after she revoked her express consent to receive such calls. Defendant alleges that Janet Folkerts expressly consented to receive calls from Seterus because her phone number was found in her loan application. However, Janet Folkerts revoked this consent orally numerous times. SOF ¶¶ 20, 24.

Seterus points to the FDCPA which provides that upon a written request from a debtor, a creditor or debt collector is required to cease communicating with the debtor. 15 U.S.C. § 1692c(c). However, the TCPA is silent on how consent to receive autodialer calls can be revoked, which means under the common law and canons of statutory construction, that an oral revocation should be effective. *See*, e.g., Restatement (Second) of Torts § 892A cmt.i (1979). ("The consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct. This unwillingness may be manifested to the actor by any words or conduct inconsistent with continued consent."); Restatement (Second) of Contracts § 42 cmt. D (1981) ) "Any clear manifestation of unwillingness to enter into the proposed bargain is sufficient [to achieve revocation]."). *Id.*

Compliance with the FDCPA does not excuse a debt collector from compliance with the TCPA. The TCPA contains no general exemption for debt collectors, nor is their conduct solely governed by the FDCPA. Debt collectors are just as subject to the provisions of the TCPA as they are to the provisions of the FDCPA. Furthermore, the FCC has declined to adopt an express exemption from the TCPA's prohibition for debt collection calls. *In Re Rules & Regs Implementing the TCPA 7 FCC 8752, 8773 (1992)*. The FCC has more recently stated that it "expect[s] debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or

an artificial or prerecorded voice message to wireless numbers." *In Re Rules & Regs Implementing the TCPA 23 FCC Rcd. 559, 565-7 (2008).*

Furthermore, FCC orders exhibit the Commission's awareness of overlap between the TCPA and the FDCPA, and that debt collector's conduct is subject to regulation under both statutes. The FCC has stated it "concur[s] with the commenters that any conflict between the requirements of the TCPA and the FDCPA would make compliance with both statutes confusing." *In Re Rules & Regs Implementing the TCPA 7 FCC 8752, 8772-3 (1992).* Debt collection cases and TCPA cases are not mutually exclusive. Since the two statutes are not in conflict, the Court must apply both where relevant.

Additionally, the 2015 FCC Order unequivocally held that consumers have the right to revoke previously-given consent to receive robocalls. The *ACA International* decision repeats and confirms this rule. The 2015 FCC Order concluded that "a called party may revoke consent at any time and through any reasonable means – orally or in writing – that clearly expresses a desire not to receive further messages." *In re Rules & Regs Implementing the TCPA, 30 FCC Rcd. 7961, 7996 (2015).* Therefore, Janet Folkerts could revoke her consent orally, which she did multiple times beginning on October 12, 2016. SOF ¶¶ 20. Defendant's continued calls to Janet Folkerts after she had revoked consent were violations of the TCPA.

## IV. FDCPA VIOLATIONS

The United States Congress, in enacting the FDCPA, found that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA broadly prohibits unfair/unconscionable collection methods; harassing, oppressive, or abusive conduct; and any false, deceptive or misleading statements, in connection with the collection of a debt. 15 U.S.C. §§ 1692d, e, and f. The Seventh Circuit has stated, "a basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable manner." *Bass v. Stolepr, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) (internal quotations omitted).

6

The Seventh Circuit has established the standard by which violations of the FDCPA are analyzed, i.e. from the view of the "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter"). The unsophisticated consumer standard "assumes that the debtor is uninformed, naïve, or trusting." *Veach v. Sheeks,* 316 F.3d 690, 692 (7th Cir. 1992). Additionally, "the unsophisticated consumer test is an objective one, meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (quotes and citation omitted).

The FCDPA is a strict liability statute. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2002); *McCabe v. Crawford & Company*, 272 F.Supp.2d 736, 743 (N.D.Ill. 2003). The test for determining whether a debt collector violated the FDCPA is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable consumer. *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).

For a Plaintiff to succeed on a claim under the FDCPA, the plaintiff must be a "consumer," and defendant must be a "debt collector" that sought to collect a "debt" from the plaintiff, as these terms are defined by the FDCPA. All three of these requirements are easily met in this matter.

Plaintiffs Janet and Dennis Folkerts are consumers because they are natural persons who were obligated or allegedly obligated to pay a debt. SOF ¶ 1. The debt involved was a consumer debt - a home mortgage that was primarily for personal, family, or household purposes. Defendant has admitted that it is a debt collector and that Defendant called Plaintiffs' cell phone numbers attempting to reach Plaintiffs regarding payments due on the Subject Loan. SOF ¶ 3.

### A. DEFENDANT CONTACTED PLAINTIFFS AFTER IT KNEW PLAINTIFFS TO BE REPRESENTED BY AN ATTORNEY IN VIOLATION OF 15 U.S.C. §§ 1692C(A)(2).

Defendant violated the FDCPA by contacting Plaintiffs after it knew that Plaintiffs were represented by counsel. Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to

7

such debt and has knowledge of, or can readily ascertain, such attorney's name and address. 15 U.S.C. §§ 1692c(A)(2). Defendant was given notice through Plaintiffs' Bankruptcy that Plaintiffs were represented by an attorney in connection with the subject debt. Defendant admits that from August 2016 to June 2017, it called Plaintiffs over 150 times in an attempt to reach Plaintiffs regarding payments due on the Subject Loan. SOF ¶¶ 10,11. Both Janet and Dennis Folkerts told Defendant on numerous occasions that they were represented by an attorney.

Furthermore, Defendant sent account statements directly to Plaintiffs, despite notice that they were represented by bankruptcy counsel in connection with the debt. As early as September 23, 2016, Plaintiffs informed Defendant in writing that they were represented by an attorney. SOF ¶¶ 18. In fact, the first phone calls Defendant made were to Plaintiffs' attorney. SOF ¶¶ 19. Additionally, Defendant mailed Plaintiffs' attorney written correspondence. SOF ¶¶ 17. Defendant clearly had knowledge that Plaintiffs were represented by counsel, yet Defendant called Plaintiffs directly, which was a violation of § 1692c(a)(2).

### B. DEFENDANT MAILED FALSE STATEMENTS TO PLAINTIFFS IN VIOLATION OF 15 U.S.C. § 1692E.

Defendant also violated the FDCPA by sending false and deceptive statements to Plaintiffs claiming there was an amount owed on the subject debt. Defendant's August 26, 2016 statement to Plaintiffs, claiming that there was an amount due on the Subject Loan of $24,358.73, was indisputably false since the debt had been discharged on February 22, 2016 and the property had been surrendered through Plaintiffs' Chapter 13 Bankruptcy. SOF ¶ 9. Defendant mailed sixteen (16) letters to Plaintiffs, beginning in July 2016 and continuing through December, 2017. Each letter alleged an increasingly greater debt owed. SOF ¶ 30-35. The letters contained charges for property preservation, attorney fees and other miscellaneous expenses, none of which were owed by Plaintiffs. *Id.*

Under 15 U.S.C. § 1692e, debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Section 1692f of the FDCPA prohibits a debt collector from using any unfair or unconscionable means to collect or attempt to collect a debt. Attempting to collect a debt on a property, which was both discharged and surrendered in

8

bankruptcy is both false, deceptive or misleading and unfair or unconscionable, in violation of § 1692e and § 1692f of the FDCPA. The Seventh Circuit has stated:

> A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is "false" in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not. A debt collector's false statement is presumptively wrongful under the Fair Debt Collection Practices Act, see 15 U.S.C. § 1692e(2)(A), even if the speaker is ignorant of the truth. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004).

There is no dispute as to the issues of material fact necessary to render a judgment in this matter. Defendant made the indisputably false statements that Plaintiffs owed a debt to Defendant, and communicated that false information to the credit bureaus. As the Seventh Circuit held in *Randolph*, such a false statement is presumptively wrongful. See also *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 996 (7th Cir. 2003). Thus, Defendant, by attempting to collect a debt on a property from Plaintiffs that had been discharged and surrendered in bankruptcy, violated § 1692e and § 1692f of the FDCPA.

## C. DEFENDANT'S VIOLATED § 1692E(8) OF THE FDCPA BY COMMUNICATING CREDIT INFORMATION WHICH IS KNOWN TO BE FALSE.

Defendant violated 15 U.S.C. § 1692e(8) by communicating credit information it knew to be false to a credit reporting agency, namely that Plaintiffs owed a debt on a property that had been discharged and surrendered in bankruptcy. It is undisputed that Defendant knew of Plaintiffs' bankruptcy discharge and knew that Plaintiffs had surrendered the property in bankruptcy. On February 29, 2016, Defendant's Agent filed a Transfer of Claim other Than for Security where Defendant Seterus was listed as the creditor of the debt where notices and payments to transferee should be sent. SOF ¶¶ 10. Plaintiffs and their attorney informed Defendant about the bankruptcy in writing. SOF ¶¶ 16, 18. Furthermore, Plaintiffs informed Defendant about the bankruptcy discharge and the fact that they had surrendered the property in the bankruptcy over the phone on more than nine (9) separate occasions. SOF ¶¶ 21.

Defendant admits that it responded to Plaintiff's dispute by reporting to the credit bureaus that Plaintiffs' current loan status was 180 days past due, despite the debt being discharged in bankruptcy and no longer due and owing. SOF ¶¶ 39. It is also undisputed that Equifax and Experian were reporting a

delinquent status on the subject loan when the debt had been discharged and the property had been surrendered in bankruptcy. SOF ¶¶ 37, 38. Thus, no genuine issue of material fact exists that Defendant violated 15 U.S.C. § 1692e(8) when it communicated information to Equifax and Experian that it knew or should have known to be false.

### D. DEFENDANT'S VIOLATIONS OF THE FDCPA ARE NOT EXCUSED BY THE BONA FIDE ERROR DEFENSE

A debt collector who unknowingly violates the FDCPA may be able to escape liability pursuant to the bona fide error defense provided for by § 1692k(c) of the FDCPA, which states that:

> A debt collector may not be held liable in any action brought under this subchapter shown by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c).

Defendant has failed to produce sufficient evidence, let alone show by a "preponderance of the evidence," that its violations were not intentional and resulted from a bona fide error.

In *Jerman v. Carlisle, McNellie, Rini Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010), the Supreme Court held that FDCPA violations excusable under § 1692k(c) must result from "clerical or factual mistakes," not mistakes of law. *Id.* at 587, 604-05. The Court drew support for its conclusion from the statutory requirement that a debt collector maintain "procedures reasonably adapted to avoid" errors. The Court wrote that "procedures" are "processes that have mechanical or other such orderly steps" designed to "avoid errors like clerical or factual mistakes," and that legal analysis did not lend itself to mechanical procedures. *Id.* at 587 (internal quotation marks omitted).

In *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895 (7th Cir. 2015), the Seventh Circuit interpreted the Supreme Court decision to mean that in order to prevail on a bona fide error defense Defendant must show three required elements: (1) that its violation was unintentional; (2) that its violation resulted from a clerical or factual mistake; and (3) that it maintained procedures reasonably adapted to avoid such mistakes. In this instant case, Defendant asserts that it has error-avoidance processes and procedures designed and actually implemented to avoid any such alleged error. However, Defendant has not shown

10

that its violation resulted from a "bona fide error" which the Supreme Court instructs are "clerical or factual mistakes." *Jerman*, 559 U.S. at 587.

Defendant had knowledge of Plaintiffs' bankruptcy discharge and the fact that the subject property had been surrendered in bankruptcy. SOF ¶¶ 9. Furthermore, Defendant was notified by Plaintiff in writing as well as by phone that the subject loan had been discharged and the property had been surrendered in bankruptcy many times, yet Defendant continued to call and report false information to the credit bureaus. SOF ¶¶ 16, 18, 21, 24, 37, 38. The sheer volume of violations is evidence that this was not a bona fide error made in good faith.

Defendant alleges it has policies and procedures implemented to avoid the error that occurred in this matter; however Defendant's Policies and Procedures Manual state that their procedures do not apply when the borrower has received a discharge of the debt in a bankruptcy proceeding. SOF ¶¶ 29, 36. Defendant's procedures contain no procedure for an employee to follow when it is discovered that monthly statements and phone calls are being made to borrowers who had received a discharge of the debt in a bankruptcy proceeding. Therefore, the Defendant's procedures are not procedures reasonably adapted to avoid the type of errors that occurred in this matter. This is illustrated by the fact that Defendant continued to call Plaintiffs over 150 times after being notified that the underlying debt had been discharged and the subject property surrendered in bankruptcy. SOF ¶¶ 27. Seterus also continued to send monthly statements even after Plaintiffs had filed this instant suit in Federal Court. Defendant's failure to allege a clerical or factual mistake that led to Plaintiffs being harassed via telephone and mail precludes Defendant from arguing bona fide error here.

## V. SETERUS VIOLATED THE FAIR CREDIT REPORTING ACT

Defendant violated the FCRA by verifying to the credit bureaus false information regarding the subject debt. The FCRA at section 1681s-2(b) provides that companies such as Defendant, which furnish data to the credit bureaus, must investigate any consumer dispute upon receiving notice of a dispute through a bureau. The record shows that Defendant received at least two such disputes. SOF ¶¶ 37, 38.

Upon receipt of any such dispute, the FCRA provides that a furnisher must:

11

>  (A) conduct an investigation with respect to the disputed information;...
> [and]
> (E) *if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified* after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>    (i) modify that item of information;
>    (ii) delete that item of information;
>    (iii) permanently block the reporting of that item of information. 15 U.S.C. § 1681s-2(b) (emphasis added).

Courts have found that FCRA section 1681s-2(b) requires furnishers of credit data not to conduct a mechanical investigation into disputes, but a qualitatively reasonable investigation, as the circumstances warrant, in order to get to the bottom of the matter and accurately answer the dispute. 15 U.S.C. § 1681s-2(b)(1)(A). *Johnson v. MBNA America Bank, NA,* 357 F.3d 426, 431 (4th Cir. 2004). If the disputed data cannot be verified, or is incomplete or inaccurate, the furnisher has a duty to delete, modify or permanently block it from reporting. 15 U.S.C. § 1681s-2(b)(1)(E). At a minimum, the furnisher must note that an item is disputed by the consumer, which may have a significant impact upon the consumer's credit score. *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149-150 (4th Cir. 2008).

Other cases have held that credit reports are "incomplete or inaccurate" within the meaning of the FCRA not only when "patently incorrect" but also when "misleading in such a way and to such an extent that it can be expected to have an adverse effect" on the consumer. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). For instance, where a consumer has presented a lender with a colorable argument against liability, failure to note the dispute in any credit report may be "misleading" and therefore "incomplete or inaccurate" within the meaning of § 1681s-2(b). *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1023-24 (9th Cir. 2009); *Saunders*, 526 F.3d 142, 149-150 (4th Cir. 2008).

Here, Defendant admits that it responded to the disputes by reporting to the credit bureaus that Plaintiffs' current loan status was 180 days past due. SOF ¶ 39. To arrive at that response, Defendant's policies and procedures allows investigators of credit bureau disputes to take one or more of the following

12

actions: (1) compare disputed information against corresponding data in MSP; (2) Review the loan records and loan notes; (3) review the file contents and related correspondence maintained in Image Repository; (4) Review credit reporting as maintained in the Credit Bureau Tradeline Web Utility; and (5)verify the payment history. SOF ¶¶ 40. Defendant's policies and procedures allow for their employees to take only one of the above mentioned actions, which is not a reasonable procedure. If Defendant had looked at Plaintiffs' credit history it would have seen the Chapter 13 documented by other creditors. If Defendant had reviewed the file contents and related correspondence it would have seen Plaintiffs written correspondence as well as court records showing that the property had been discharged and surrendered. SOF ¶¶ 18. There is simply no factual record in this case that suggests that Defendant's procedures were reasonable. Thus, Plaintiffs' Motion must be granted as to Plaintiffs' FCRA claim.

## A. DEFENDANT IS LIABLE FOR WILLFUL VIOLATIONS OF THE FCRA.

Defendant not only violated the FCRA, but it did so willfully. The standard to show a "willfull" violation under the FCRA is not high. As the U.S. Supreme Court has confirmed, although a knowing violation of the act is willful, minimally a plaintiff need only show that the defendant acted recklessly in contravention of the statute or with "reckless disregard," not that it acted intentionally or with malice. *Safeco Insurance Co. of America v. Burr*, 127 S. Ct. 2201, 2208-2210 (2007).

This is a lower standard than the standard for willful violations or punitive damages claims under most common law torts. Prior to *Safeco*, multiple federal courts that had applied the lower "reckless disregard" willfulness standard in FCRA dispute cases in other jurisdictions, have found that consumers may proceed to trial with their willfulness claims where a defendant's conduct is not merely a result of a negligent act that was promptly cured. *See, e.g., Sheffer v. Experian Info. Solutions, Inc.*, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003) (defendant's conduct was willful, and not merely an "isolated instance of human error... promptly cure[d]". (quoting *Boris v. Choicepoint Servs.*, 249 F. Supp.2d 851, 862 (W.D. Ky. 2003)) (emphasis added).

Here, Defendant had actual knowledge of Plaintiffs bankruptcy for over a year prior to it receiving Plaintiffs' disputes from Experian and Equifax. Defendant had actual knowledge that Plaintiffs disputed

13

the allegation that they owed money on the subject loan through multiple occasions of written and verbal correspondence with Plaintiffs. Surely, this is not a case of mere negligence. Seterus was either willfully right or willfully wrong regarding the subject debt. Since it is undisputed that Plaintiffs had received a bankruptcy discharge of the subject debt and had surrendered the property in bankruptcy, it is clear that Defendant was willfully wrong.

There can be no doubt that Seterus in this case made conscious and knowing decisions that show a high degree of recklessness and indifference for consumer rights that is well beyond negligence. The conduct and violations of FCRA section 1681s-2(b) set forth in the previous section are of such a nature that they provide more than sufficient evidence for this Court to make a "reckless disregard" finding.

## VI. PLAINTIFFS HAVE SUFFERED ACTUAL DAMAGES FROM DEFENDANT'S UNLAWFUL CONDUCT.

As a result of the conduct, actions, and inaction of Defendant, Plaintiffs suffered the loss of credit, and the loss of the ability to purchase and benefit from a line of credit. In April of 2017, Plaintiffs tried to obtain a mortgage loan from American Portfolio Mortgage. Plaintiffs application for the loan was denied based on numerous late payments on their previous mortgage. SOF ¶¶ 41. Michael Cavoto, the Senior Loan Officer working with Plaintiffs sent Plaintiffs the credit report from which the denial was based. On that credit report Seterus reported that Plaintiffs account was over 120 months delinquent. SOF¶¶ 42. As a result of Defendant's wrongful conduct, Plaintiffs were unable to purchase a new home and had to suffer the indignity and humiliation of having their credit denied.

Furthermore, Plaintiffs suffered the loss of time, frustration and aggravation associated with writing dispute letters and responding to Defendant's constant phone calls. Plaintiffs were forced to track the status of their disputes and monitor their credit file. Most importantly, Plaintiffs suffered from the helplessness of their situation. No matter what they said or did, Defendant's violative conduct continued. This is not a case of simple ignorance or excusable neglect. Instead of taking appropriate notice of Plaintiffs' bankruptcy discharge and surrender of the subject property, Defendant continued to harass Plaintiffs and deprive them of the relief they had sought when they filed for bankruptcy.

## VII. CONCLUSION

For all of the reasons set forth above, Plaintiffs' Motion for Summary Judgment should be granted.

Dated: May 16, 2018

                                                  Respectfully Submitted,

                                                  **FRANKFORT LAW GROUP**

By:   /s/ Julia Topik Laws
        Julia Topik Laws, 6307189
        Thomas W. Toolis
        Jacqueline Diane Opyd
        10075 West Lincoln Highway
        Frankfort, IL 60423
        Ph: 708-349-9333
        jtl@jtlawllc.com
        twt@jtlawllc.com
        jdo@jtlawllc.com

*Counsel for Plaintiffs Dennis and Janet Folkerts*